IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FANGBENG FUONDJING, et al. :
:
v. : Civil Action No. DKC 10-1169
:
AMERICAN AIRLINES, INC. :
:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case involving common law contract and tort claims arising in the course of international air travel is a motion to dismiss filed by Defendant American Airlines, Inc. (ECF No. 10). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be granted.

**I. Background**

The following facts are set forth in the complaint. (ECF No. 2). On June 26, 2008, Plaintiff Fangbeng Fuondjing ("Mr. Fuondjing") purchased round-trip airfare for himself and three family members to travel from Washington, D.C., to Douala, Cameroon, for the purpose of attending memorial services for a deceased relative. The memorial services were to take place from December 12 through 14, 2008. Mr. Fuondjing purchased tickets for a flight departing from Ronald Reagan National

Airport, in Washington, D.C., on December 10, 2008, at 1:59 p.m., and arriving at John F. Kennedy International Airport, in New York City, at 3:20 p.m.  From there, Mr. Fuondjing and his family were scheduled to board a flight to Brussels at 6:15 p.m., which was to arrive on December 11 at 10:40 a.m.  The connecting flight from Brussels to Cameroon was scheduled to depart at 5:25 p.m. on the same date.

Approximately one month after he booked the tickets, Mr. Fuondjing received an email from his travel agent advising that the departure time for the first leg of the itinerary – *i.e.*, the flight from the District of Columbia to New York City – had been changed from 1:59 p.m. to 4:00 p.m.  Concerned that the rescheduled departure time would have the family arriving in New York too late to board the connecting flight to Brussels, Mr. Fuondjing promptly contacted his travel agent and learned that the change had been made by the air carrier, Defendant American Airlines ("American").  When Mr. Fuondjing contacted American, he was assured that the family would arrive in time to catch the connecting flight.  Despite this assurance, Mr. Fuondjing was skeptical; he contacted American a second time and suggested that the family drive to New York City, rather than fly.  An American representative informed him that if the family missed the first leg of the trip, the entire itinerary would be forfeited.  The representative advised, however, that

precautionary measures would be taken to ensure the family's arrival in New York in time to board the connecting flight. On or about November 11, 2008, Mr. Fuondjing purchased tickets for two nephews to join the family on the trip to Cameroon.[1]

On December 10, 2008, Plaintiffs arrived at Reagan National Airport at 11:45 a.m., hoping to board an earlier flight to New York City, but were not permitted to do so. Plaintiffs' flight, which was scheduled to leave at 4:00 p.m., did not depart until 5:30 p.m. Consequently, Plaintiffs missed their connecting flight; spent four nights, without access to their luggage, in hotel rooms in New York and Brussels; and did not arrive in Cameroon until December 15, after the memorial services had concluded.

On March 8, 2010, Plaintiffs filed suit against American in the Circuit Court for Montgomery County, Maryland, alleging contract and tort claims under Maryland state law. (ECF No. 2). American timely removed the case to this court (ECF No. 1) and,

---

[1] Mr. Fuondjing, the three family members for whom he originally purchased tickets, and his two nephews are named as plaintiffs in this action. Aside from Mr. Fuondjing, the complaint provides no basis for distinguishing the plaintiffs, but it appears that four of them were between the ages of two and eight years-old at the time of the trip. (ECF No. 2, ¶ 26). Mr. Fuondjing does not purport to bring suit on behalf of the minor children; rather, they are named as plaintiffs in their own right. Pursuant to Fed.R.Civ.P. 17(b)(3), capacity to sue or be sued is determined "by the law of the state where the court is located." In Maryland, it is well-settled that minors lack the capacity to sue in their own right. *See Fox v. Wills*, 390 Md. 620, 625-26 (2006).

shortly thereafter, filed the pending motion to dismiss, asserting that Plaintiffs' claims are completely preempted by the Montreal Convention, a federal treaty (ECF No. 10). Plaintiffs have opposed this motion. (ECF No. 12).

**II. Standard of Review**

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in

4

the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

### III. Analysis

On its face, Plaintiffs' complaint raises state law claims of breach of contract, negligence, and fraudulent and/or reckless conduct. In removing to this court, American asserted that the complaint nevertheless presents a federal question because the state law claims are completely preempted by the

5

Montreal Convention. It also asserted that there is removal jurisdiction based on diversity of citizenship. (ECF No. 1). In moving to dismiss, American argues that Plaintiffs' "state law claims stand or fall on whether they are completely preempted by the Montreal Convention, both for purposes of determining the existence of federal question jurisdiction and whether their complaint is legally sufficient to withstand a motion to dismiss." (ECF No. 10, at 8).

**A.    The Montreal Convention**

The Montreal Convention, formally known as the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, *reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000) ("Montreal Convention" or "Convention"), entered into force on November 4, 2003, and succeeded the Warsaw Convention as the treaty governing rights and liabilities in international air carriage.[2]   By its express language, the

---

[2] The Warsaw Convention was formally known as the Convention for Unification of Certain Rules for International Air, Oct. 29, 1934, *reprinted at* 49 Stat. 3000, *et seq.* ("Warsaw Convention"). While the Montreal Convention "reversed one of the premises of the original Warsaw Convention, which favored the airlines at the expense of consumers," it "did not alter the original Warsaw Convention goal of maintaining limited and predictable damage amounts for airlines." *Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co.*, 522 F.3d 776, 781 (7th Cir. 2008). Thus, "courts construing the Montreal Convention have concluded that it has 'substantially the same preemptive effect' as the Warsaw Convention," and have looked to case law interpreting the Warsaw Convention in considering related provisions under the succeeding treaty. *See Igwe v. Northwest Airlines, Inc.*, No. H-

Convention governs "all international carriage of persons, baggage or cargo performed by aircraft for reward." *Id*. at Art. 1(1). "International carriage" is defined as "any carriage in which, according to the agreement between the parties, the place of departure and the place of destination . . . are situated either within the territories of two State Parties, or within the territory of a single State Party if there is an agreed stopping place within the territory of another State, even if that State is not a State Party." *Id*. at Art. 1(2). Both the United States and Cameroon are signatories to the Convention, and it is undisputed that Plaintiffs' itinerary constitutes "international carriage," as contemplated under Article 1(2). *See* Listing of signatories to the Montreal Convention, http://www.icao.int/icao/en/leb/mtl99.pdf (last visited Jan. 18, 2011) (copy attached).

Like its predecessor treaty, the Montreal Convention prescribes liability for three categories of damages arising from the international carriage of passengers, baggage, or cargo by airlines. Article 17 of the Convention establishes carrier liability for death or bodily injury of a passenger or the destruction, loss of, or damage to baggage occurring on board a flight or in the process of embarking or disembarking; Article

---

05-1423, 2007 WL 43811, at *2 (S.D.Tex. Jan. 4, 2007) (quoting *Paradis v. Ghana Airways Ltd.*, 348 F.Supp.2d 106, 111 (S.D.N.Y. 2004)).

18 provides for damage to cargo, subject to certain exclusions; and Article 19 applies to claims for damages occasioned by delay in the carriage of passengers, baggage, or cargo. *See Weiss v. El Al Israel Airlines, Ltd.*, 433 F.Supp.2d 361, 365 (S.D.N.Y. 2006).

As relevant to the instant case, Article 22 of the Convention limits airline liability in relation to delay in the carriage of passengers, baggage, or cargo. Specifically, it limits liability for damages caused by delay in the carriage of passengers to 4,150 Special Drawing Rights ("SDR")[3] and damages caused by delay in the carriage of baggage to 1,000 SDR per passenger, unless the passenger declares a higher value. *See* Montreal Convention Art., 22(1) and (2). The Convention also contains an explicit exclusivity provision, which sets forth the governing conditions and liability limits of any case falling within its scope:

> In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention without prejudice to the

---

[3] "A Special Drawing Right ('SDR') is an artificial currency, established by a 'basket' of global currencies (the U.S. dollar, the euro, the Japanese yen and the British pound), and published daily by the International Monetary Fund," the value of which "fluctuates based on the global currency market, and . . . is determined 'at the date of the judgment.'" *Sompo Japan Ins., Inc.*, 522 F.3d at 779 n. 3.

> question as to who are the persons who have the right to bring suit and what are their respective rights. In any such action, punitive, exemplary or any other non-compensatory damages shall not be recoverable.

*Id.* at Art. 29.

The Supreme Court of the United States has not yet interpreted the exclusivity clause of the Montreal Convention, but it has discussed the broad sweep of analogous provisions under the Warsaw Convention. *See El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155 (1999). In *Tseng*, a passenger sued in New York state court for, *inter alia*, psychological and psychosomatic injuries she suffered in relation to an intrusive security search prior to boarding an international flight. The airline removed to federal court on the basis of the Foreign Sovereign Immunities Act, *see Tseng v. El Al Israel Airlines, Ltd.*, 122 F.3d 99, 101 (2$^d$ Cir. 1997), and argued that the plaintiff's action was governed by the rights and liabilities set forth in the Warsaw Convention. The district court agreed, dismissing her personal injury claim because she failed to allege that she suffered a physical injury, as required to recover under Article 17, and finding that the Warsaw Convention precluded her from pursuing a claim under New York state tort law. The United States Court of Appeals for the Second Circuit reversed, in relevant part, finding that "a plaintiff who did

9

not qualify for relief under the Convention could seek relief under local law for an injury sustained in the course of international air travel." *Tseng*, 525 U.S. at 161.

Before the Supreme Court, the passenger conceded that she could not recover under Article 17 of the Warsaw Convention, but argued that, because of that fact, she should have been permitted to assert her state law tort claim. The Court rejected that argument, holding that "recovery for a personal injury suffered 'on board [an] aircraft or in the course of any of the operations of embarking or disembarking,' . . . if not allowed under the Convention, is not available at all." *Id*. at 161. "Given the Convention's comprehensive scheme of liability rules and textual emphasis on uniformity," the Court explained, "we would be hard put to conclude that the delegates at Warsaw meant to subject air carriers to the distinct, nonuniform liability rules of the individual signatory nations." *Id*. at 169. Still, the Court recognized that the preemptive effect of the treaty was not without limits:

> [T]he Convention's preemptive effect on local law extends no further than the Convention's own substantive scope. . . . A carrier, therefore, is indisputably subject to liability under local law for injuries arising outside of that scope: *e.g.*, for passenger injuries occurring before 'any of the operations of embarking or disembarking.

10

*Id*. at 172. The majority further opined that because "the nation-state, not subdivisions within one nation, is the focus of the Convention and the perspective of our treaty partners . . . [o]ur home-centered preemption analysis . . . should not be applied, mechanically, in construing our international obligations." *Id*. at 175.[4] Most importantly, the Court recognized that the exclusivity question had "been settled prospectively" by a then-recent change in the Warsaw Convention effected by Montreal Protocol No. 4. That comprehensive language appears in Article 29 of the Montreal Convention, as quoted above.

**B. Complete Preemption**

Defendant contends that Plaintiffs' claims are "completely" preempted by the Montreal Convention. The concept of "complete preemption" is to be contrasted with that of "conflict preemption." *See Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 370-71 (4th Cir. 2003).

The question of whether complete or conflict preemption applies often arises in the context of a motion to remand after an air carrier defendant removes a case from state court asserting that a complaint facially raising state law claims is

---

[4] This passage was specifically directed toward the dissent written by Justice Stevens, who disagreed with the premise underlying the majority decision that "preemption analysis should be applied differently to treaties than to other kinds of federal law." *Id*. at 177 (Stevens, J., dissenting).

11

completely preempted by the Montreal Convention, and therefore presents a federal question. Under the doctrine of conflict preemption, state laws that conflict with federal laws are preempted, and preemption may be asserted as a federal defense to the plaintiff's state court law suit. *Id*. (citing *Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 186-87 (4th Cir. 2002)). Because conflict preemption is a defense, however, "it does not appear on the face of a well-pleaded complaint, and, therefore does not authorize removal to federal court." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). The complete preemption doctrine, by contrast, does constitute a proper basis for removal:

> In the case of complete preemption . . . Congress "so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Taylor*, 481 U.S. at 63-64, 107 S.Ct. 1542. That is to say, the doctrine of complete preemption "converts an ordinary state common law complaint into one stating a federal claim." *Id*. at 65, 107 S.Ct. 1542. Thus, the doctrine of complete preemption serves as a corollary to the well-pleaded complaint rule: because the state claims in the complaint are converted into federal claims, the federal claims appear on the face of the complaint. *Id*. at 63-65, 107 S.Ct. 1542.

*Darcangelo*, 292 F.3d at *187; see also Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) ("when a federal statute wholly displaces the state-law cause of action through complete pre-

emption . . . a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.").

Neither the Supreme Court nor the Fourth Circuit has specifically addressed whether the Warsaw or Montreal Conventions completely preempt state law claims, and "[t]here is clearly a split of authority" among lower courts considering the question. *See Knowlton v. American Airlines, Inc.*, No. RDB-06-854, 2007 WL 273794, at *5 (D.Md. Jan. 31, 2007).[5] That question need not be answered here, however, because the propriety of removal is not at issue. Although American removed partially on the basis of federal question jurisdiction – arguing, as it does in the instant motion, complete preemption under the Montreal Convention – it also asserted diversity of citizenship as a jurisdictional basis, and the requirements for diversity jurisdiction appear to be met. Plaintiffs are Maryland citizens and American is a citizen of Delaware and Texas. The amount in controversy, moreover, is well over $1 million.

---

[5] Courts have offered conflicting interpretations of whether *Tseng* supports conflict or complete preemption. *Compare Sompo Japan Ins., Inc.*, 522 F.3d at 781 (citing *Tseng* for the proposition that "the [Warsaw] Convention's preemption is not complete"), *with Husmann v. Trans World Airlines, Inc.*, 169 F.3d 1151, 1153 n. 5 (8th Cir. 1999) (finding *Tseng* "reinforces our decision that Husmann's state law cause of action is completely preempted by the Warsaw Convention").

13

If Plaintiffs' claims are subject only to conflict, rather than complete, preemption, American would typically be required to raise the preemption argument in a pleading under Fed.R.Civ.P. 8(c). *See Eniola v. Leasecomm Corp.*, 214 F.Supp.2d 520, 525 (D.Md. 2002); *Gray v. Metts*, 203 F.Supp.2d 426, 428 (D.Md. 2002). Courts have found dismissal to be proper, however, "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston-Salem, North Carolina*, 85 F.3d 178, 181 (4th Cir. 1996); *see also Andrews v. Daw*, 201 F.3d 521, 524 (4th Cir. 2000) (permitting dismissal on *res judicata* grounds); *Rice v. PNC Bank, N.A.*, No. PJM 10-07, 2010 WL 1711496, at *3 (D.Md. Apr. 26, 2010) (dismissing TILA claims on motion to dismiss as untimely). Here, as the following discussion will show, a conflict preemption defense would be meritorious, and considering the Supreme Court's cautionary statement in *Tseng*, 525 U.S. at 175, that preemption analysis "should not be applied, mechanically, in construing our international obligations," American can assert conflict preemption in its dismissal motion. Thus, although Defendant may be incorrect that Plaintiffs' "state law claims stand or fall on whether they are completely preempted by the Montreal Convention" (ECF No. 10, at 8), the general issue concerning the preemptive scope of the C onvention is ripe for resolution.

14

## C. Application of the Montreal Convention

Article 29 is an explicit exclusivity provision. As the First Circuit stated in a particularly clear and straightforward manner, "[i]f the Convention applies in a particular case, it is preemptive, and the trier of fact must then determine whether the carrier is liable under the Convention. . . . If the Convention is not applicable, it is not preemptive, and the passenger is free to pursue his or her claim under local law." *Acevedo-Reinoso v. Iberia Lineas Aereas de Espana S.A.*, 449 F.3d 7, 13 (1st Cir. 2006).

Plaintiffs' claims, which arise from a four-day delay in their arrival to Cameroon, fall squarely within the substantive scope of Article 19. Under that provision, "[t]he carrier is liable for damages occasioned by delay in carriage by air of passengers, baggage or cargo." Montreal Convention, Art. 19.

In their opposition papers, Plaintiffs argue that Article 19 does not apply because of the second sentence of that provision: "Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures." Plaintiffs contend that American did not take all reasonable measures to avoid damage. Their argument in this regard is based on a misunderstanding of the clear language

15

of the relevant provision. Under Article 19, American may escape liability for damages for delay upon proving that it took all reasonable measures to avoid such damages or that it was impossible for it to take those measures. Its failure to do so, however, does not mean that Article 19 does not apply, as Plaintiffs assert.

Plaintiffs further contend that "[s]ome New York federal courts have refused to rule that a tort claim is preempted where an airline has engaged in 'outrageous' conduct that went 'beyond the scope of normal airline operations,'" citing *In re Nigeria Flights Contract Litigation*, 520 F.Supp.2d 447 (E.D.N.Y. 2007). The cited portion of that opinion, however, addresses a preemption issue under the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 41713. *Id*. at 469 ("the ADA should not be 'construed in a manner that insulates air carriers from tort liability for injuries caused by outrageous conduct that goes beyond the scope of normal aircraft operations") (internal marks omitted). This argument is unpersuasive in the context of the Montreal Convention, which contains its own provisions regarding limitations on liability.[6] In fact, Plaintiffs cite a string of

---

[6] Notably, *In re Nigeria*, 520 F.Supp.2d at 453, also contains an extensive discussion of Montreal Convention jurisprudence, specifically addressing the only conceivable argument Plaintiffs could have raised here, *i.e.*, that American's conduct constituted nonperformance of the contract, rather than delay, and therefore was not governed by Article 19

cases in support of a general argument that "Defendant's broad preemption defense must fail" (ECF No. 12, at 8), each of which addresses preemption claims under the ADA and is, therefore, wholly inapposite.

Plaintiffs additionally argue that "Defendant's acts constituted willful misconduct," and cite language in Article 25 of the Warsaw Convention, as amended by Montreal Protocol No. 4, providing that "[t]he limits of liability specified in Article 22 shall not apply if it is proved that the damage resulted from an act or omission . . . done with intent to cause damage or recklessly and with knowledge that damage would probably result." (*Id*. at 9, 10-11). *See Shah v. Kuwait Airways Corporation*, 653 F.Supp.2d 499, 506 (S.D.N.Y. 2009) (explaining

---

of the Convention. Anticipating that Plaintiffs would raise this claim, American argued against it in the memorandum accompanying its motion to dismiss. Plaintiffs failed to take this cue, but even if they had, such an argument would have been unavailing. Courts finding that the Convention does not apply because there was nonperformance, rather than delay, have considered facts in which the airline "simply refused to fly [the plaintiffs], without offering alternate transportation." *Id.* at 454; *see also Nankin v. Continental Airlines*, No. 09-07851, 2010 WL 342632, at *7 (C.D.Cal. Jan. 29, 2010) (nonperformance where airline "refused to perform the contract"); *Weiss*, 433 F.Supp.2d at 366 (nonperformance where the plaintiffs "never left the airport"). Here, Plaintiffs' alleged damages stem from the fact that their arrival in Cameroon was delayed past the date of the memorial services they hoped to attend. *See Kamanou-Goune v. Swiss International Airlines*, No. 08 Civ. 7153 (SCR)(GAY), 2009 WL 874600, at *4 (S.D.N.Y. Mar. 27, 2009) ("Courts have construed nonperformance claims as sounding in delay where plaintiff was initially refused boarding but the defendant ultimately transported plaintiff on a later flight.").

that courts "have interpreted the voluminous case law on the misconduct exception to the Warsaw Convention [under Article 25] as applying with equal force to the analogous provision in the Montreal Convention"), *rev'd on other grounds*, 387 Fed.Appx. 13 (2$^d$ Cir. 2010).[7] To the extent Plaintiffs argue that American's alleged willful misconduct exempts their claims from the Montreal Convention, similar arguments have been uniformly rejected by other courts. *See Carey v. United Airlines*, 255 F.3d 1044, 1049 (9th Cir. 2001) ("nothing in Article 25 suggests that the Warsaw Convention does not apply to claims arising out of intentional misconduct"). Indeed, proving willful misconduct would lift the liability limits otherwise imposed by Article 22 of the Montreal Convention, but would not exempt the complaint from the Convention altogether. *See Booker v. BWIA West Indies Airways Ltd.*, No. 06-CV-2146 (RER), 2007 WL 1351927, at *3 (E.D.N.Y. May 8, 2007) ("the language of the Montreal Convention itself makes it clear that intentional acts by a defendant merely lifts the limitation of liability rather than remove claims from the Montreal Convention's scope").

Insofar as Plaintiffs contend that the Montreal Convention, assuming it applies, does not limit the damages they seek, their argument is premature. Although they have not specifically

---

[7] The parallel provision of the Montreal Convention is Art. 22(5).

requested leave to amend their complaint as an alternative argument, leave should freely be granted in circumstances such as this. *See Sakaria v. Trans World Airlines*, 8 F.3d 164, 169 (4th Cir. 1993) (finding error where district court did not grant leave to amend to assert claim under the Warsaw Convention: "the command of Fed.R.Civ.P. 15(a) that leave to amend should be 'freely given when justice so requires' should have been followed – if that were thought a necessary condition to having the claim considered on the merits"). Indeed, American does not oppose permitting Plaintiffs to amend their complaint (ECF No. 13, at 5), and Plaintiffs do have viable claims under the Montreal Convention. Accordingly, the court will grant Plaintiffs leave to file an amended complaint. A determination as to whether the willful misconduct exception applies, however, cannot be made on the current record.

Plaintiffs may assert in their amended complaint that American's conduct was intentional – and, therefore, that the liability limits of the Convention do not apply – but they may not raise claims for punitive or other damages related to non-physical injury. As noted above, Article 29 stipulates that "any action for damages, however founded, . . . can only be brought subject to the conditions and . . . limits of liability as are set out in this Convention," and "[i]n any such action,

19

punitive, exemplary or any other non-compensatory damages shall not be recoverable."

**IV. Conclusion**

For the foregoing reasons, American's motion to dismiss will be granted without prejudice to Plaintiffs' right to amend. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge