IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FANGBENG FUONDJING, et al. :

   v. : Civil Action No. DKC 10-1169

AMERICAN AIRLINES, INC. :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case is a motion to dismiss filed by Defendant American Airlines, Inc. (ECF No. 20). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be granted.

**I. Background**

The factual background of this case was set forth in a prior memorandum opinion and need not be repeated here. *See Fuondjing, et al. v. American Airlines, Inc.*, Civ. No. DKC 10-1169, 2011 U.S. Dist. LEXIS 5123 (D.Md. Jan. 19, 2011). On March 8, 2010, Plaintiffs Fangbeng Fuondjing, Nicole Nwafor, Amietee Fuondjing, Wafeu Fuondjing, Junior Nguti, and Ryan Nguti filed suit against Defendant American Airlines, Inc., in the Circuit Court for Montgomery County, Maryland. (ECF No. 2). The complaint alleged contract and tort claims under Maryland

law arising from delay in international air transportation provided by Defendant from Washington, DC, to Douala, Cameroon. Defendant timely removed to this court (ECF No. 1) and, shortly thereafter, filed a motion to dismiss, asserting that Plaintiffs' claims were preempted by the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, *reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000) ("Montreal Convention") (ECF No. 10).

On January 19, 2011, this court issued a memorandum opinion and order granting Defendant's motion. (ECF Nos. 14, 15). The court found that Plaintiffs' state law claims were preempted by the Montreal Convention, but granted leave for Plaintiffs to file an amended complaint asserting claims under the treaty. As to damages, the court cautioned:

> Plaintiffs may assert in their amended complaint that American's conduct was intentional – and, therefore, that the liability limits of the [Montreal] Convention do not apply – but they may not raise claims for punitive or other damages related to non-physical injury. As noted above, Article 29 stipulates that "any action for damages, however founded, . . . can only be brought subject to the conditions and . . . limits of liability as are set out in this Convention," and "[i]n any such action, punitive, exemplary or any other non-compensatory damages shall not be recoverable."

(ECF No. 14, at 19-20).

Plaintiffs filed their amended complaint on February 22, 2011. (ECF No. 19). Despite the court's explicit instruction that only claims under the Montreal Convention could be asserted, Plaintiffs have failed to plead a cause of action under the treaty. Instead, they attempt to revive previously dismissed state law counts for breach of contract, negligence, negligent misrepresentation, and fraudulent misrepresentation; to raise new federal claims of racial and/or national origin discrimination under 42 U.S.C. § 1981 and the Federal Aviation Act of 1958; and to reassert their discredited claims for punitive and compensatory damages.

On March 8, Defendant filed the pending motion to dismiss, again arguing that Plaintiffs' claims are preempted by the Montreal Convention. (ECF No. 20).

**II. Standard of Review**

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still

3

requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950

(quoting Fed.R.Civ.P. 8(a)(2)).  Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

**III. Analysis**

As the court explained in its prior memorandum opinion:

> [T]he Montreal Convention prescribes liability for three categories of damages arising from the international carriage of passengers, baggage, or cargo by airlines. Article 17 of the Convention establishes carrier liability for death or bodily injury of a passenger or the destruction, loss of, or damage to baggage occurring on board a flight or in the process of embarking or disembarking; Article 18 provides for damage to cargo, subject to certain exclusions; and Article 19 applies to claims for damages occasioned by delay in the carriage of passengers, baggage, or cargo. *See Weiss v. El Al Israel Airlines, Ltd.*, 433 F.Supp.2d 361, 365 (S.D.N.Y. 2006).
>
> As relevant to the instant case, Article 22 of the Convention limits airline liability in relation to delay in the carriage of passengers, baggage, or cargo. Specifically, it limits liability for damages caused by delay in the carriage of passengers to 4,150 Special Drawing Rights ("SDR") and damages caused by delay in the carriage of baggage to 1,000 SDR per passenger, unless the passenger declares a higher value. *See* Montreal Convention, Art., 22(1) and (2). The Convention also contains an exclusivity provision, which sets forth the governing conditions and liability limits of any case falling within its scope:

> In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights. In any such action, punitive, exemplary or any other non-compensatory damages shall not be recoverable.
>
> *Id*. at Art. 29.

(ECF No. 14, at 8-9) (footnote omitted). In granting Defendant's initial motion to dismiss, the court determined that "Plaintiffs' claims, which arise from a four-day delay in their arrival to Cameroon, fall squarely within the substantive scope of Article 19." (*Id*. at 15).

In their amended complaint, Plaintiffs present essentially the same facts as in the original, but alter certain language in an attempt to bypass the liability limitations of the Montreal Convention. Whereas the original complaint sounded in delay, the amended version asserts that Plaintiffs were "bumped" from the first flight in their itinerary, which resulted in "non-performance" of their contract. (ECF No. 19, ¶¶ 10, 46). Plaintiffs state in their opposition papers that "bumping claims [are] properly understood not as claims for delay, but as claims for complete nonperformance of the contract between the

6

passenger and the airline." (ECF No. 21, at 10). Thus, they argue that the state and federal claims asserted in their amended complaint are not subject to preemption under the Montreal Convention.

The court expressly addressed this argument in its initial memorandum opinion, observing in a footnote that "the only conceivable argument Plaintiffs could have raised" for their claims to fall outside the scope of the Montreal Convention was that "American's conduct constituted nonperformance of the contract, rather than delay, and therefore was not governed by Article 19 of the Convention." (*Id*. at 16-17 n. 6). While Plaintiffs failed to make this argument in their papers opposing Defendant's initial motion to dismiss, the court explained that "even if they had, such an argument would have been unavailing":

> Courts finding that the Convention does not apply because there was nonperformance, rather than delay, have considered facts in which the airline "simply refused to fly [the plaintiffs], without offering alternate transportation." [*In re Nigeria Flights Contract Litigation*, 520 F.Supp.2d 447, 454 (E.D.N.Y. 2007)]; *see also Nankin v. Continental Airlines*, No. 09-07851, 2010 WL 342632, at *7 (C.D.Cal. Jan. 29, 2010) (nonperformance where airline "refused to perform the contract"); *Weiss*, 433 F.Supp.2d at 366 (nonperformance where the plaintiffs "never left the airport"). Here, Plaintiffs' alleged damages stem from the fact that their arrival in Cameroon was delayed past the date of the memorial services they hoped to attend. *See Kamanou-Goune v. Swiss International Airlines*, No.

7

> 08 Civ. 7153 (SCR)(GAY), 2009 WL 874600, at
> *4 (S.D.N.Y. Mar. 27, 2009) ("Courts have
> construed nonperformance claims as sounding
> in delay where plaintiff was initially
> refused boarding but the defendant
> ultimately transported plaintiff on a later
> flight.").

(*Id.*).

Here, the critical fact relevant to the preemption issue is that Defendant did ultimately transport Plaintiffs to Cameroon, albeit later than Plaintiffs had planned. Thus, the instant case is unlike cases cited by Plaintiffs, such as *Wolgel v. Mexicana Airlines*, 821 F.2d 442, 445 (7th Cir. 1987), *In re Nigeria*, 520 F.Supp.2d at 455, and *Weiss*, 433 F.Supp.2d at 369, where passengers "bumped" from their flights were offered no alternative accommodations by the airline. While it may be the case that Plaintiffs were "bumped" from their originally scheduled outgoing flight to another flight, departing approximately two hours later, that event, in and of itself, does not take their claims outside the scope of the Montreal Convention. Rather, it is the failure to provide alternative transportation that gives rise to nonperformance of the contract such that the exclusivity clause of the Convention is not triggered. Where a plaintiff asserts total nonperformance of the contract, courts must "scrutinize the facts to determine whether the claim, however founded, actually arose out of a delay in transportation." *Kamanou-Goune*, 2009 WL 874600, at *4.

In doing so here, it is clear that Plaintiffs' claims arise from delay, not nonperformance. Accordingly, their exclusive remedy, as the court explained in its prior opinion, is under Article 19 of the Montreal Convention.

Assuming, *arguendo*, that Plaintiffs' federal claims of racial and/or national origin discrimination are not subject to preemption, the amended complaint nevertheless fails to state a claim upon which relief may be granted. Plaintiffs appear to argue that the rescheduling of the first leg of their itinerary, approximately four and one-half months in advance, from a departure time of 1:55 p.m. to 4:00 p.m., was motivated by a discriminatory animus toward them based on their race and/or national origin. They seem to acknowledge that this alleged discrimination occurred, sight unseen, through a communication between Defendant and their travel agent. (ECF No. 19, ¶ 10). Nevertheless, Plaintiffs assert, Defendant "should have known that the bumping would make it highly improbable that the[ir] arrival in Cameroon would be timely and that [Plaintiffs] were discriminated [against] on the basis of race and or national origin." (*Id.* at ¶ 32).

Section 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens[.]" 42 U.S.C. §

9

1981(a). The statute broadly defines the term "make and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Thus, a cause of action under § 1981 "must be founded on purposeful, racially discriminatory actions that affect at least one of the contractual aspects listed in § 1981(b)." *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999). To state a cause of action under § 1981, a plaintiff must show that: "(1) he or she is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities protected by the statute." *Baltimore-Clark v. Kinko's Inc.*, 270 F.Supp.2d 695, 699 (D.Md. 2003) (citing *Buchanan v. Consolidated Stores Corp.*, 125 F.Supp.2d 730, 734 (D.Md. 2001)).

Here, it is undisputed that Plaintiffs, "as black persons, are members of a protected class." (ECF No. 19, ¶ 30). Beyond that, however, the amended complaint is utterly devoid of any allegation giving rise to even a remote inference that the rescheduling of Plaintiffs' flight was based on discriminatory animus. Indeed, it is unclear how Defendant could have been aware of Plaintiffs' protected status at the time the flight was rescheduled. In sum, Plaintiffs' bald assertions of racial and

10

national origin discrimination are "nothing more than the sort of unadorned allegations of wrongdoing to which *Twombly* and *Iqbal* are directed." *Francis*, 588 F.3d at 195-96. Accordingly, their § 1981 claim cannot be sustained.

Plaintiffs have also failed to state a claim under the Federal Aviation Act, the relevant provisions of which were repealed long ago. As the United States District Court for the Eastern District of New York explained in *Puckett v. Northwest Airlines, Inc.*, 131 F.Supp.2d 379, 383 (E.D.N.Y. 2001):

> Before Congress repealed it on January 1, 1983, § 404(b) of the Federal Aviation Act, then codified at 49 U.S.C. app. § 1374(b), prohibited, in part, ". . . subject[ing] any particular person, port, locality, or description of traffic in air transportation to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever." The Airline Deregulation Act, Pub.L. 95-504, 92 Stat 1705, repealed all of § 404(b) except that the section required air carriers to provide "safe and adequate service." 49 U.S.C. app. § 1551(a)(2)(B) (recodified at 49 U.S.C. § 41702). As Judge Gleeson of this court has previously held, a claim for discrimination under the Federal Aviation Act is no longer available and thus a private right of action may not lie to enforce a non-existent statute. *Fields v. BWIA Int'l Airways, Ltd.*, No. 99 CV 2493, 2000 WL 1091129, at *4 (E.D.N.Y. July 7, 2000).

Plaintiffs' claim in this regard fails for the same reason.[1]

---

[1] In opposing Defendant's motion to dismiss the amended complaint, Plaintiffs reiterate several unsuccessful arguments

11

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted. A separate order will follow.[2]

```
                          _____/s/_____
                          DEBORAH K. CHASANOW
                          United States District Judge
```

---

they raised in their papers opposing the initial motion to dismiss, *i.e.*, that "the Defendant did not take reasonable measures to avoid damage," that "[t]he underlying purpose of the Montreal Convention was undermined by the Defendant," and that the "delay in reaching their [destination] constituted willful misconduct." (ECF No. 21, at 13-14). The court addressed these arguments in its prior memorandum, finding them to be based on a misunderstanding of the relevant law. Those findings apply with equal force here.

[2] Plaintiffs were alerted to the only viable claims that could be brought under the Convention, but have chosen instead to replead the rejected claims along with others that fail. The only mention in their opposition memorandum of possible additional amendment concerns the status of the minors. They have not sought leave to amend to plead any viable claim. Accordingly, this dismissal is with prejudice.